PEOPLE *v.* COLLINS.

1. HOMICIDE—STATUTES—INFORMATION—MALICE PREPENSE.

In a prosecution for murder, where the information was in the statutory short form provided by section 15739, 3 Comp. Laws 1915, it was not necessary to prove that the homicide was done in direct perpetration of any of the felonies enumerated in section 15192, 3 Comp. Laws 1915, it being sufficient to show that it was done with malice prepense.

2. SAME—FIRST DEGREE—EVIDENCE—SUFFICIENCY.

Testimony that defendant and a companion were both armed, that deceased, a detective, with others, was lying in wait near some stolen tires which had been hidden in a cemetery, that, as defendant and his companion ap-

proached, deceased turned a flashlight on them, and was immediately shot, *held*, in connection with other circumstances detailed in the record, sufficient evidence of malice to sustain a conviction of murder in the first degree.

3. SAME—CRIMINAL LAW—TRIAL—INSTRUCTIONS AS TO LESSER OFFENSE—MANSLAUGHTER.

In a prosecution for murder, where the instructions covered murder in the first and second degrees, but no requests to charge were preferred, failure to charge respecting manslaughter was not error.

4. SAME—PRINCIPALS—EVIDENCE—SUFFICIENCY.

Where the evidence warranted a finding that both defendant and his companion were engaged, while armed, in the common enterprise of removing stolen property, it was not necessary, in order to sustain a conviction of defendant as a principal, to prove that he, rather than his companion, fired the fatal shot.

5. SAME — TRIAL—INSTRUCTIONS—REQUESTS TO CHARGE—MISCARRIAGE OF JUSTICE.

In the absence of requests to charge, where the charge as a whole fairly submitted the issues to the jury, and it cannot be said that defendant's conviction resulted in a miscarriage of justice, this court, on error, will not further consider the charge.

Error to Wayne; Collingwood (Charles B.), J., presiding. Submitted October 13, 1921. (Docket No. 180.) Decided December 21, 1921.

Ulysses Collins was convicted of murder in the first degree, and sentenced to imprisonment for life in the branch of the State prison at Marquette. Affirmed.

*Sid. A. Erwin* (*Samuel Shimans*, of counsel), for appellant.

*Merlin Wiley*, Attorney General, *Paul W. Voorhies*, Prosecuting Attorney, and *John V. Brennan*, Assistant Prosecuting Attorney, for the people.

CLARK, J.   On May 13, 1918, Morgan & Wright at Detroit had loaded on Michigan Central tracks a

car of United States automobile tires.    Part of the
tires were 32 by 4½ cord.    The car was sealed.    When
it reached its destination 112 tires were missing.    The
seal had been broken.    Hidden in a cemetery adjoin-
ing the Michigan Central tracks, at the village of
Oakwood, Wayne county, 111 United States auto-
mobile tires, 32 by 4½ cord, were found.    On the
night of May 16, 1918, 7 special officers of the railroad,
railroad detectives, among them Rodney Goe, were
lying in wait near the tires.    About 10 o'clock 2 men
came down the tracks carrying a scantling, a 2x4, and
a lunch box, turned into the cemetery, deposited the
scantling and box and walked toward the place where
the officers were lying.    When they were about 12
or 15 feet from the officers, Goe turned a flashlight on
them, and he was instantly shot.

The two men were identified by witnesses as de-
fendant Collins and one Dickson.    There was testi-
mony by some of the surviving officers that Dickson
fired the shot that killed Goe, but the testimony is
not harmonious in that respect.    An officer testified:

"The other man who was with this man (the de-
fendant) opened fire with an automatic pistol, and this
man opened fire also right into the bunch of men that
were laying there.    Then the men began hollering and
Rodney Goe hollered 'I am shot.'    *    *    *    The
heavy set man (Dickson) fired two shots and im-
mediately this man (defendant) started to shoot.    I
couldn't say which shot it was that struck this man
I know as Rodney Goe.    Immediately after the
shooting, one of the men hollered, 'He is shot.'    The
shooting was all over by that time.    *    *    *

"The heavy set man (Dickson) carried a 2x4 on his
shoulder.    *    *    *    The relative position of the other
man who I claim was carrying this 2x4, to this man
who was carrying the box, was—he was four or five
feet ahead of him.    The man coming down the track
with the 2x4 had it on the right shoulder.    The second
man was dressed in just clothes.

"How do I account for the second man shooting this

man I call Rodney Goe—there wasn't—it couldn't have been any other way than him shooting him because when the light was put on the heavy set man started to shoot and fired two shots.   This man (indicating) stood in front of him and Goe turned his light out and went to get up on his knees and then he sunk down.   There was no other way except that man shooting him.   *   *   *   In reference to the flashlight from the short stocky man (Dickson) when it was flashed—Goe was right down in the grass this way (indicating) and had his head looking up, and these men were directly over him.   He had the light right like that (indicating), it started that quick (indicating), and Goe went to get up and the other man started to shoot."

Another officer also said:

"Then they started again and Mr. Collins was on the left and Mr. Dickson was on the right.   They were about half a foot apart when they came down toward us, and Rodney Goe flashed a light, when they were, I should judge, about 12 or 15 feet away.   They shot for the light but didn't hit him that first shot.   He got on his knees and then he said, 'They got me.'   Then they both emptied their guns and started to run.   We didn't do any shooting until after they stopped."

It is said that Collins and Dickson used automatic pistols, and that after they had emptied them "into the bunch" of officers they fled.

There was testimony that about 8 or 9 o'clock that evening defendant had attempted to hire an automobile truck to go out to Oakwood to get about 120 automobile cord tires, 32 by 4½, as he said, the trip to be made about 3:30 the next morning.   The lunch box was identified as having been seen in the possession of Collins and Dickson.   There was testimony that Dickson had exhibited a gun in the presence of Collins and said that the gun was carried to "scare railroad bulls away."

"He mentioned the fact that he had the gun along to scare railroad bulls away.   He said that sometimes

they try to take stuff away from them, and all he had to do was stick that up in their faces and it would scare them away."

There was testimony that about midnight of May 15th, Collins had attempted to hire at a garage a truck and that he had returned to the garage about 3 o'clock in the night of the 16th (morning of the 17th) of May, and stated that somebody had found the stuff he wanted and had taken it away. There was also testimony that Collins had attempted to hire a truck to go out west Fort street (direction of Oakwood) for a load of tires at 7 or 8 o'clock, evening of May 15th, the trip to be made about 4 o'clock the next morning. It is also claimed that two or three days before this shooting and in the night defendant hired a truck and driver and went out Fort street to the country, to the railroad tracks, and from a ditch along the tracks loaded into the truck 40 or 50 bars of pig lead, which were taken to a junk yard. The testimony connected Dickson with this incident, and it also fairly indicates that he and Collins were acting conjointly with respect to the tires.

The defendant sought to prove an alibi, denied at length the testimony of the prosecution and had testimony that he enjoyed a good reputation. He was convicted of murder in the first degree, and has appealed, and contends:

1. The court erred in permitting the jury to pass upon the question of murder in the first degree, there being no evidence of wilfulness, deliberation and premeditation, or that the homicide was committed in the perpetration or attempt to perpetrate a burglary or robbery or other of the felonies enumerated in section 15192, 3 Comp. Laws 1915. The information was in the statutory short form provided by section 15739, 3 Comp. Laws 1915. It was not necessary to prove that the shooting was done in direct perpetration of

any of the felonies enumerated in the said statute. It was sufficient to show that it was done with malice prepense. Testimony as to the tires, their concealment in the cemetery, defendant's conduct in regard thereto, his presence in the cemetery at night with his companion, the evidence that they were acting conjointly, the having of the scantling after the unsuccessful efforts to hire a truck to get the tires in the nighttime, had an important bearing upon the question of malice. And defendant and his companion were both armed. One of them had a gun, it was said, for use against railroad detectives. And when the light was flashed they shot instantly at the officers, asked no questions, said nothing, emptied their guns "into the bunch" and fled. There was no claim by defendant that he shot in panic, sudden fright or self-defense. He denied the shooting and claimed an alibi. But he insists that he is entitled to the benefit of every theory of innocence, and that assuming that he did the shooting, still:

"Confronted, suddenly and unexpectedly, in the dark with a penetrating flashlight, the situation was such that even a man, without a criminal intent, might have used a pistol as Dickson did; he might have fled, as these two did, but that would not prove that a wilful, deliberate and premeditated intent to kill."

And he cites *Nye* v. *People*, 35 Mich. 16; *People* v. *Cismadija*, 167 Mich. 210; *Howard* v. *State*, 82 Ark. 97 (100 S. W. 756). The cases are clearly distinguishable upon the facts. If the accused did the shooting as charged, and under the circumstances related, and the jury believed that he did, the facts are clearly sufficient to sustain the verdict and hence the submission of the question to the jury. See *People* v. *Wolf*, 95 Mich. 625; *People* v. *Vinunzo*, 212 Mich. 472; *People* v. *Collins*, 166 Mich. 4.

2. That the court failed to charge respecting man-

slaughter.    The instructions covered murder in the first and in the second degree.    But no requests to charge were preferred, hence, under the holding in the late case of *People* v. *Allie, ante,* 133, and cases there cited, the failure to charge respecting manslaughter was not error.

3. That Dickson, not Collins, killed Goe and that the court therefore erred in saying to the jury that the showing by the people was that defendant Collins—

"was one of the two men, who, on the night of May 16th, came up the track and fired the shots from their revolvers, one of which caused the death of Rodney Goe.    This is the basis of the charge against defendant, Ulysses Collins."

The evidence does not clearly show which of the men fired the shot which killed Goe.    We think it was not necessary for the jury to determine that question in order to convict defendant.    The evidence above reviewed warrants a finding that both were principals (3 Comp. Laws 1915, § 15757; *People* v. *Wycoff,* 150 Mich. 449) acting conjointly, having a common purpose and intent, malice prepense, both being armed, to shoot if disturbed or apprehended in their effort to remove from the cemetery the stolen tires, and that defendant, whether his shooting or Dickson's killed Goe, was guilty of murder in the first degree.    *People* v. *Repke,* 103 Mich. 459; *People* v. *Onesto,* 203 Mich. 490.

4. In the absence of requests to charge, we will not consider the charge further, being of the opinion that the charge as a whole submitted fairly the issues to the jury and that defendant's conviction is not a miscarriage of justice.    We have considered the questions raised and find no reversible error.

Judgment affirmed.

STEERE, C. J., and WIEST, STONE, BIRD, and SHARPE, JJ., concurred.    MOORE and FELLOWS, JJ., did not sit.