PEOPLE v. JEBB.

1. CRIMINAL LAW—RAPE—INSTRUCTIONS—INCLUDED OFFENSES.
Instruction given jury in prosecution for rape which did not instruct on the offenses included was not reversible error, where counsel had not made a request therefor (CLS 1961, § 750.520; CL 1948, § 768.29).

2. SAME — EVIDENCE — ADMISSION OF STATEMENT — CONSTITUTIONAL LAW—VOLUNTARY STATEMENT.
Admission into evidence of statement of defendant taken before arraignment and before appointment of counsel, held not error, where there was ample evidence statement was voluntary, defense counsel consented to its admission, and record indicates no violation of constitutional rights of defendant under either United States Constitution or the Michigan Constitution.

---

REFERENCES FOR POINTS IN HEADNOTES
[1] 44 Am Jur, Rape § 124.
[2] 21 Am Jur 2d, Criminal Law § 313; 20 Am Jur, Evidence §§ 498, 499.
Accused's right to assistance of counsel at or prior to arraignment. 5 ALR3d 1269.
[3] 5 Am Jur 2d, Appeal and Error § 851.

3. SAME—NEW TRIAL—DISCRETION OF COURT.
    The granting or denial of a delayed motion for a new trial in
    prosecution for crime rests in the sound discretion of the trial
    court, and will not be disturbed on appeal without a clear
    showing of abuse of such discretion.

Appeal from Bay; Lewis (David R.) and Dardas
(Leon R.), JJ. Submitted Division 3 January 5,
1965, at Grand Rapids. (Docket No. 549.) Decided
April 26, 1966. Leave to appeal denied by Supreme
Court August 25, 1966. See 378 Mich 727.

Delmar Harvey Jebb was convicted of rape. De-
fendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, and *Martin B. Legatz,*
Prosecuting Attorney, for the people.

*Thomas P. Patterson,* for defendant.

WATTS, P. J. Delmar Harvey Jebb was found
guilty by jury of rape in violation of CLS 1961,
§ 750.520 (Stat Ann 1954 Rev § 28.788) in Bay
county circuit court. Defendant was sentenced to
Jackson prison on September 30, 1959, to a term of
not less than 20 nor more than 30 years. On Janu-
ary 7, 1965, a petition for appointment of counsel for
an indigent for purposes of appellate review was
filed by the defendant and counsel appointed by
order of the same date. Thereupon counsel pro-
ceeded to file a claim of appeal on February 15,
1965, clearly beyond the jurisdictional time require-
ment for taking an appeal contained in GCR 1963,
803.1. The proper procedure for counsel would have
been to file an application for delayed appeal pur-
suant to GCR 1963, 803.3 and 806.4(2). We shall
treat the filing in this appeal as an application for

delayed appeal and hereby order the application granted.

The complainant is a 44-year old woman who lives alone in Bay City, Michigan. The defendant is a young man who had visited friends living in the complainant's neighborhood and had seen her dressed in shorts, working in her garden.

No useful purpose can be served by repeating the many sordid facts in the record. The testimony is clear and undisputed that defendant Jebb forced his way into complainant's house at approximately 5 a.m. on May 30, 1959, and had sexual relations with her. She testified that defendant choked, beat, abused, blindfolded, put her in fear of her life, and committed an act of sexual intercourse against her will.

The defendant contends that he forced his way into complainant's house and she consented to the act of sexual intercourse.

The defendant claims: (1) that it was error for the trial court to restrict the jury to a charge of rape alone in view of the testimony; and (2) that the admission in evidence of defendant's June 2, 1959, statement was a violation of his constitutional rights.

The trial court did not instruct the jury on the offenses included in the crime of rape, nor did counsel make such a request.

The Court finds no reversible error in the instruction given to the jury by the trial court. Code of criminal procedure, CL 1948, § 768.29 (Stat Ann 1954 Rev § 28.1052) reads as follows:

"It shall be the duty of the judge to control all proceedings during the trial, and to limit the introduction of evidence and the argument of counsel to relevant and material matters, with a view to the expeditious and effective ascertainment of the truth regarding the matters involved. The court shall

instruct the jury as to the law applicable to the case and in his charge make such comment on the evidence, the testimony and character of any witness, as in his opinion the interest of justice may require. The failure of the court to instruct on any point of law shall not be ground for setting aside the verdict of the jury unless such instruction is requested by the accused."

In *People* v. *Thomas* (1965), 1 Mich App 444, this Court held that the trial court did not err in failing to instruct the jury on the included offenses when there was no request to do so by counsel. Cited in support of this Court's finding: *People* v. *Allie* (1921), 216 Mich 133; *People* v. *Robinson* (1924), 228 Mich 64; *People* v. *Collins* (1921), 216 Mich 541; *People* v. *Manchester* (1926), 235 Mich 594.

There is ample evidence to support the people's contention that the defendant's statement of June 2, 1959, was voluntary and accepted in evidence only after his counsel stated that he had no objection to receiving the statement in evidence.

*Direct examination by defense counsel*
"*Q.* Mr. Jebb, are you the defendant in this case?
"*A.* Yes, I am.
"*Q.* I want you to speak up so the jury can hear. Have I instructed you regarding the fact the Constitution guarantees you do not have to incriminate yourself and you do not have to take the stand in your own behalf—you understand that?
"*A.* Yes, I do.
"*The Court:* If you don't speak louder witness, the jury is not going to hear. You will have to speak up.
"*Q.* Have I explained to you you do not have to take the stand on your own behalf?
"*A.* Yes, you have.
"*Q.* I also explained if you do take the stand and testify on your own behalf, the prosecuting attorney,

Mr. McDonough and Mr. Laracey may cross-examine you on anything that would be—pertain to this case.

"*A.* Yes, you have.

"*Q.* Are you willing to make a statement and testify before this Court?

"*A.* Yes, I am.

"*Q.* Do you testify and make the statement voluntarily?

"*A.* Yes, I do. * * * Between 9 and 2. My friend was going to give me a ride down to mother's house—we got half way down there, about on 32d and Marsac, some place around there and me and him started arguing—I was going home where my wife was and he said he was not going to take me—he lives down there and I told him to let me off there and I would go home to my mother's—as I was walking by there, walked by Miss Boley's house, stopped, went up to the front door, knocked, nobody answered, so I broke the glass and went in and she was standing in the arch to the kitchen, I started to say something to her and she started screaming and—

"*The Court:* What time was this?

"*A.* This was the next morning after 5—quarter after 5, 5:30, something like that—I don't remember the exact time—and she started screaming, running into the kitchen. I got scared—she must not have recognized me—I got scared and grabbed her around the neck with my arm—I yoked her out.

"*The Court:* What do you mean?

"*A.* You put your arm around a person's neck from behind and make them pass out by putting pressure on the nerves of the neck. I yoked her out, she fell on the floor and I started to talk to her—she was laying and moaning—I got kind of scared—I put a blindfold on her, started talking to her, trying to calm her down—laying there moaning—I was scared of what I done—I did not realize what I did—I thought if I could not calm her down I would leave—she seemed to be calming down pretty good—I started to grab her in the kitchen, talking to

her—she told me I should not have come—broke the door like that—I told her I was sorry—I did not realize what I was doing when I did it—she said if I had waited a little while longer she would have answered the door, then she took the blindfold off in the kitchen, then we went into the bedroom and she—well, we started making love but I could not get aroused—this was in the bedroom and so she suggested—"

*Cross-examination by Mr. McDonough.*

"*Q.* Witness are you a married man?

"*A.* Yes, I am.

"*Q.* How long have you been married?

"*A.* Two years.

"*Q.* Do you have any children?

"*A.* Yes, I do.

"*Q.* How many children do you have?

"*A.* Two children.

"*Q.* You sat here this morning when I read the statement you gave to the prosecuting attorney, were you sitting here?

"*A.* Yes, I was.

"*Q.* It is true you gave that statement voluntarily to the prosecuting attorney of this county?

"*A.* It was.

"*Q.* Did you voluntarily tell this jury you broke the glass in that woman's door, May 30, 1959, is that right?

"*A.* Yes, I did.

"*Q.* And when you entered her home, is it true you struck her on a number of occasions that morning?

"*A.* It is not.

"*Q.* Then how would you get her mouth bloody?

"*A.* I don't know how—I think probably when I yoked her out I was kind of drunk—when I left go of her she fell to the floor—she probably bumped her head.

"*Q.* Probably bumped her head and you sit here and she voluntarily submitted to you after you yoked her out, as you call it?

"*A.* Yes, I do.

"*Q.* You admit you had intercourse that morning with her?

"*A.* Yes, I do.

"*Q.* You admit this statement is absolutely correct, don't you?

"*A.* I admit I gave it—yes."

The record indicates that there was no delay by the defendant, the police, or the court after the alleged attack.

After the defendant left the house, the complainant called her neighbor on the telephone and told her something terrible had happened and that she was afraid and asked her to watch the house because she was going to call the police and wanted to make sure "nobody came to my house and caught me calling the police". The complainant called the police department and told them that a young man had broken into her home, beat, and raped her, and that she wanted the police to come out. Within 5 minutes a police officer came to her home. Later other officers came to her home and showed her a number of pictures. She identified a picture of the defendant Jebb.

Petition for appointment of counsel for defendant was filed June 2, 1959. On June 3, 1959, the court appointed counsel for the defendant. On June 11th, defendant was arraigned on a complaint before a municipal judge and bound over to the circuit court for trial. Defendant was arraigned on the information on June 29th. The trial commenced September 16, 1959.

The jury determined the factual questions in the instant case and found the defendant guilty of the crime of rape. Approximately 4 years later, the defendant filed a delayed motion for a new trial. The court having found no error was committed in the trial of the instant case in any respect, the motion for a new trial was denied.

The defendant cited the following cases to support his contention that the admission in evidence of defendant's June 2, 1959, statement was in violation of his constitutional rights: *Mallory* v. *United States* (1957), 354 US 449 (77 S Ct 1356, 1 L ed 2d 1479); *Gideon* v. *Wainwright* (1963), 372 US 335 (83 S Ct 792, 9 L ed 2d 799, 93 ALR2d 733); *White* v. *Maryland* (1963), 373 US 59 (83 S Ct 1050, 10 L ed 2d 193); *Massiah* v. *United States* (1964), 377 US 201 (84 S Ct 1199, 12 L ed 2d 246); *Escobedo* v. *Illinois* (1964), 378 US 478 (84 S Ct 1758, 12 L ed 2d 977).

In *Escobedo* v. *Illinois, supra,* an accused was convicted of murder in the criminal court of Cook county, Illinois, after a trial during which the trial court admitted in evidence incriminating statements made by the accused during police interrogations conducted before the accused was formally indicted, the police, without informing the accused of his right to remain silent, having denied his request to consult with his attorney and having informed him that they had convincing evidence of his guilt. The supreme court of Illinois affirmed the conviction. On certiorari, the Supreme Court of the United States reversed. In an opinion by Goldberg, J., expressing the views of 5 members of the Court, it was held that under the particular circumstances, the police investigation having been one focused on the accused as a suspect rather than a general investigation, the refusal to honor the accused's request to consult with his attorney constituted a denial of his right to assistance of counsel under the Sixth and Fourteenth Amendments (US Const), and that the statements should not have been admitted in evidence.

The factual differences in the above cases are tenable grounds for distinguishing them from the instant case. The record indicates no violation of the constitutional rights of the defendant either un-

der the United States Constitution or the Michigan Constitution.

In our opinion the trial court did not err in accepting in evidence the statement of the defendant. The granting or denial of the delayed motion for a new trial rests in the sound discretion of the trial court. *People* v. *Lowenstein* (1944), 309 Mich 94. We will not disturb without a clear showing of abuse of such discretion.

Affirmed.

FITZGERALD and HOLBROOK, JJ., concurred.