PEOPLE *v.* CAMAK.

1. CRIMINAL LAW—TRIAL—DUE PROCESS—PRIVATE CONVERSATION BETWEEN JUDGE AND PROSECUTOR.

Conversation between trial judge and prosecutor, in presence of defendant and his counsel but out of their hearing, before jury arrived and before defendant's trial actually commenced, which resulted in motion by prosecutor to delete names of certain witnesses from information because they had no testimony to give in case against defendant, such deletion being agreed to by defendant's counsel, *held,* not a denial of defendant's right to a fair and impartial trial.

---

REFERENCES FOR POINTS IN HEADNOTES ·

[1] 21 Am Jur 2d, Criminal Law § 328.
[2] 5 Am Jur 2d, Appeal and Error § 545.
[3, 4] 21 Am Jur 2d, Criminal Law § 368.
[5] 21 Am Jur 2d, Criminal Law §§ 313, 314, 368.
[6, 7] 21 Am Jur 2d, Criminal Law § 303.
[8] 53 Am Jur, Trial §§ 286, 796–798, 800.
[9] 53 Am Jur, Trial §§ 275, 277, 281, 282.
[10] 46 Am Jur, Robbery § 50; 30 Am Jur 2d, Evidence §§ 1124, 1143, 1162.
[11] 5 Am Jur 2d, Appeal and Error §§ 545, 728.
[12] 5 Am Jur 2d, Appeal and Error § 545.

2. APPEAL AND ERROR—QUESTIONS REVIEWABLE—QUESTIONS NOT RAISED IN TRIAL COURT.

> Court of Appeals will not consider questions on appeal that were not raised in the trial court.

3. CRIMINAL LAW—IDENTIFICATION—LINEUP—SELF-INCRIMINATION.

> An ordinary lineup of an accused person with others for purposes of identification by victims of the alleged crime does not violate the right of the accused not to incriminate himself.

4. SAME—SELF-INCRIMINATION—EVIDENCE.

> The right of the accused not to incriminate himself is a prohibition of the use of physical or moral compulsion to extort communications from him, not an exclusion of his body as evidence when it may be material.

5. SAME—RIGHT TO COUNSEL—LINEUP.

> Defendant had no right to counsel before being exhibited in lineup for identification by victims of armed robbery, at least when investigation had not yet focused on him, as shown by his release shortly thereafter (CLS 1961, § 750.529).

6. SAME—PRESENTENCE REPORT—EXAMINATION BY DEFENDANT.

> A defendant convicted in a criminal case has no constitutional right to examine and explain the presentence report.

7. SAME—PRESENTENCE REPORT—EXAMINATION BY DEFENDANT.

> Failure of trial court to permit defendant, convicted of robbery armed, to examine presentence report *held*, not error, where record does not show that defendant or his counsel asked to examine report (CLS 1961, § 750.529).

8. SAME—ROBBERY ARMED—INSTRUCTIONS—LESSER INCLUDED OFFENSES.

> Failure of trial court to charge jury as to lesser included offenses in trial for robbery armed, *held*, not error, where evidence showed that all elements of offense of robbery armed were present, under the facts no lesser offense could have been found, defendant pleaded and attempted to prove alibi, and no request to charge as to included offenses was made by defendant (CLS 1961, § 750.529).

9. SAME—EVIDENCE—WITNESSES—CREDIBILITY.

> Conflict of testimony may very well occur in the course of the trial of prosecution for crime, and for this reason credibility of witnesses and weight to be given their testimony is for trier of facts to determine.

10. ROBBERY—EVIDENCE—SUFFICIENCY.

Evidence in trial for robbery armed, in which witnesses testified that the owner and customers of a drugstore were robbed by 2 men armed with a gun, a shot was fired, the robbers escaped in a certain described car, defendant was stopped by police a little while later while driving a similar car, and 5 eyewitnesses identified defendant as one of the robbers, as against testimony of defendant and his sister that he was at sister's home at the time of the robbery, *held*, sufficient to sustain conviction of defendant of crime of robbery armed (CLS 1961, § 750.529).

11. APPEAL AND ERROR—COURT-APPOINTED APPELLATE COUNSEL—DISCHARGE.

Question of right of defendant to discharge his court-appointed appellate counsel in appeal from conviction of crime of robbery armed is not properly before the Court of Appeals because it arose after appeal was commenced (CLS 1961, § 750-.529).

12. SAME—QUESTIONS REVIEWABLE—CRIMINAL LAW—VOIR DIRE—ANSWERS OF PROSPECTIVE JURORS.

Court of Appeals does not consider question raised by allegation of defendant that prospective jurors gave untruthful answers on voir dire examination to question of their connection with law-enforcement agency when the matter was not presented to trial court in the form of motion for new trial.

Appeal from Recorder's Court of Detroit; Pugsley (Earl C.), J., presiding. Submitted Division 1 October 3, 1966, at Detroit. (Docket No. 614.) Decided January 24, 1967. Leave to appeal denied by Supreme Court December 10, 1968. See 381 Mich 791.

Melvin Camak was convicted of robbery armed. Defendant appeals. Affirmed.

*Frank J. Kelley*, Attorney General, *Robert A. Derengoski*, Solicitor General, *Samuel H. Olsen*, Prosecuting Attorney, *Samuel J. Torina*, Chief Appellate Lawyer, and *Richard J. Padzieski*, Assistant Prosecuting Attorney, for the people.

*George Stone*, for defendant.

Holbrook, J. Melvin Camak, defendant herein, and Edward Collins were charged in an information dated June 9, 1964, with the crime of robbery armed.* Their trial was set for September 1, 1964, before the Honorable Earl C. Pugsley, visiting judge in the recorder's court for the city of Detroit. Before commencement of the trial, Edward Collins entered a guilty plea which was duly accepted. The prosecutor then moved to add Edward Collins as a *res gestae* witness for the people. Upon defense counsel's objection and request for adjournment if the motion was granted, the prosecutor withdrew his motion. The trial resulted in a verdict of guilty as charged. The defendant was sentenced to 15 to 30 years in prison. Subsequently, upon request of defendant under GCR 1963, 785.4(1) appellate counsel was appointed, and this appeal taken.

Defendant raises 8 questions for review which are here restated and discussed.

1. *Was the private conversation between the judge and prosecutor prior to commencement of the trial in the sight of the defendant and counsel but out of their hearing, a denial of defendant's constitutional rights?*

After acceptance of the plea of guilty from co-defendant Edward Collins, the record discloses the following, which bears upon the issue raised:

"*The Court.* In the case of the People *v.* Melvin Camak, are the people ready?
"*Mr. Eggleton.* Yes, Your Honor.
"*The Court.* Is the defendant ready?
"*Mr. Henry.* We are ready, Your Honor.
"*The Court.* All right. You may call a jury.
"*Court Clerk.* They have gone for the jury now, Your Honor.

---

* CLS 1961, § 750.529 (Stat Ann 1965 Cum Supp § 28.797).

"*The Court.*    Mr. Eggleton, will you·approach the bench, please?

"*Mr. Eggleton.*    Yes, sir.

· "*Court reporter's note.*    At this time Mr. Eggleton has walked up to the bench and is now conversing with the court.    This is within the sight of defense counsel but not within his hearing.    After a short conference, the following ensued.

"*Mr. Eggleton.*    If it pleases the court, at this time, in the matter of the People *v.* Melvin Camak, there are several persons indorsed on the information and it has been called to my attention that they could only give testimony regarding the defendant Collins, and the defendant Collins' case has been disposed of.    Those persons' names are: Bruce Kennedy, right on the bottom of the list, Your Honor, Bruce Kennedy, and going to the second column, starting with Thomas McGrath, Maurice Lloyd, Roger Pockey, Thomas Rassler, Donald Dwyer, James Scott, and Edward Fant.    Bruce Kennedy was the detective, Your Honor, that held the showup for Collins.    The remaining officers participated in the arrest of Collins.    Neither—none of these persons, according to the information I have received, know anything about the defendant Camak at all, and at this time we would move that these persons be deleted from the information in respect to the trial against Melvin Camak.

"*Mr. Henry.*    We have no objection, Your Honor.

"*The Court.*    The motion having been made that the following witnesses whose names have been indorsed upon, and appear on the information, will be excused from attendance at this trial, and those witnesses are: Bruce Kennedy, Thomas McGrath, Maurice Lloyd, Roger Pockey, Thomas Rassler, Donald Dwyer, James Scott, and Edward Fant. Now my understanding is that there is no objection on the part of the defendant Camak to the granting of this motion.

"*Mr. Henry.*    That is correct, Your Honor.

"*The Court.* The motion is granted and these names will be stricken."

It is evident from the foregoing that the jury was not present during this part of the proceeding nor had defendant's trial actually commenced. The attorney for defendant indicated his understanding of the purpose of the conversation by agreeing to the deletion of the names of witnesses as to Collins alone and did not raise any objections to the procedure. Although it would have been a better procedure if the defendant and his counsel had been included in the conversation, we fail to find a denial to the defendant of his right to a fair and impartial trial under the facts presented. *Snyder* v. *Massachusetts* (1934), 291 US 97 (54 S Ct 330, 78 L ed 674); *People* v. *Medcoff* (1955), 344 Mich 108.

2. *Was the arrest of the defendant unlawful and was there an illegal search and seizure?*

This issue is raised here for the first time on appeal. No objection was made on the examination, it was not raised before or during the trial, and therefore the trial court has not passed upon it. The Court of Appeals will not consider questions on appeal that were not raised in the trial court. *People* v. *Will* (1966), 3 Mich App 330.

3. *Was the compulsory appearance of the defendant in the "lineup," without explanation to him of his right to counsel, a denial of his constitutional rights?*

Such "lineups" have been approved in the recent case of *Wade* v. *United States* (CA5, 1966), 358 F2d 557, wherein at p 559 it is stated:

"Appellant concedes that the courts have repeatedly held that an ordinary lineup of an accused person with others for the purpose of having them viewed by victims of the alleged crime for purposes of identification does not run afoul of the self-incrim-

ination provisions of the Fifth Amendment. Although no Supreme Court decision on this precise point has been cited nor found by us, there is the well-known dictum of Mr. Justice Holmes in *Holt* v. *United States* (1910), 218 US 245 (31 S Ct 2, 54 L ed 1021), where it is said that the prohibition of the Fifth Amendment 'is a prohibition of the use of physical or moral compulsion to extort communications from him, not an exclusion of his body as evidence when it may be material.'

"The court of appeals for the second circuit, sitting *en banc* in the case of *United States, ex rel. Stovall,* v. *Denno* (CA2, 1966), 355 F2d 731, deals with this problem *in extenso.* We find no reason to express a contrary conclusion so far as relates to the ordinary police lineup which is carried out under conditions which permit the greatest objectivity of viewing the accused with others who are exhibited with him."

Appellant herein claims that *Escobedo* v. *Illinois* (1964), 378 US 478 (84 S Ct 1758, 12 L ed 2d 977) applies because at the time in question, the investigation had focused on him. He claims that he should have been advised of his right to counsel before being placed in the lineup. We do not read *Escobedo, supra,* as requiring a defendant to be advised of his right to counsel before he may be placed in a "lineup." In any event, defendant was released shortly thereafter which indicates to us that at the time of defendant being placed in the lineup the investigation had not as yet focused on him.

4. *Was the trial court's failure to permit defendant to examine and explain the presentence report a denial of his constitutional rights?*

The record discloses no request by defendant or his counsel of the court to examine the presentence report, and as pointed out by defendant the record

fails to disclose an offer by the court to defendant to examine it at the time of sentence.

The court did, after verdict of the jury, say to defendant the following:

"*The Court.* It will be the 17th of September at 9 o'clock in the morning to receive the judgment and sentence of the court. In the meantime if the defendant or his counsel either together or separately wish to interview me, I will arrange for you to do so. The defendant is not on bond, is he?

"*Court Clerk.* No, he is not, Your Honor.

"*Mr. Henry.* No, he has been unable to make bond, Your Honor."

In a similar case, the United States court of appeals, first circuit, *Powers* v. *United States* (CA 1, 1963) 325 F2d 666, 667 stated in part as follows:

"We do not think it was error, however, for the court to impose final sentence without giving Powers and his counsel an opportunity to review the report and recommendations of the director of the bureau of prisons and to present witnesses to show errors in the report. In *Williams* v. *New York* (1949), 337 US 241, 250, 251 (69 S Ct 1079, 93 L ed 1337), the Court said that the Fourteenth Amendment was not to be treated 'as a uniform command that courts throughout the Nation abandon their age-old practice of seeking information from out-of-court sources to guide their judgment toward a more enlightened and just sentence.' And the Court also said: 'We do not think the Federal Constitution restricts the view of the sentencing judge to the information received in open court. The due process clause should not be treated as a device for freezing the evidential procedure of sentencing in the mold of trial procedure. So to treat the due process clause would hinder if not preclude all courts—State and Federal—from making progressive efforts to improve the administration of criminal justice.' We see no basis for distinguishing

between due process under the Fourteenth Amendment and due process under the Fifth Amendment. Indeed from the final sentence of the above quotation we think that the Court intended its statements to apply to due process under both Amendments. See *Hoover* v. *United States* (CA 10, 1959), 268 F2d 787, 790."

That the trial judge may consider additional factors in determining sentence is well settled in Michigan. *People* v. *Williams* (1923), 225 Mich 133; *People* v. *Losinger* (1951), 331 Mich 490 (44 ALR2d 1449); *People* v. *Guillett* (1955), 342 Mich 1.

We find no error in this regard under the facts of this case.

5. *Did the court err in failing to charge the jury with respect to the lesser included offenses in the crime of "robbery armed?"*

The defendant's defense is evidenced by his attorney's opening statement, *i.e.*, "very simply, our defense is that the defendant is not the man involved." This statement coupled with his notice of alibi and testimony presented indicating his presence elsewhere at the time of the offense conclusively indicates that there was no claim nor could there have been under the facts that there was only an attempted robbery armed or a simple assault and battery. All the elements necessary for robbery armed were present.

No request to charge as to the included offenses was made by the defendant. In the case of *People* v. *Jebb* (1966), 3 Mich App 118, this Court stated on p 121:

"In *People* v. *Thomas* (1965), 1 Mich App 444, this Court held that the trial court did not err in failing to instruct the jury on the included offenses when there was no request to do so by counsel. Cited in support of this Court's finding: *People* v. *Allie* (1921), 216 Mich 133; *People* v. *Robinson*

(1924), 228 Mich 64; *People* v. *Collins* (1921), 216
Mich 541; *People* v. *Manchester* (1926), 235 Mich
594."

The rule stated in *Jebb, supra,* is applicable to
the case at hand and no error was committed by
the court in failing to instruct as to the included
offenses.

6. *Did the evidence fail to prove the guilt of de-
fendant beyond a reasonable doubt?*

The record discloses that on April 25, 1964, Lin-
coln Racey, owner of Racey's Pharmacy at 12546
Dexter in Detroit, at about 10:35 p.m. was in the
back of his store when he was told by one of his
clerks that a man wanted to see him. As he ap-
proached him, the man had a shiny gun in his hand
and said, " 'get over here, this is a holdup,' he said,
'get in the back of the store and lay down.' " Mr.
Racey did as he was told and was joined by clerks
and customers all in a small space at the rear of
the store. Another man, claimed to be Camak, was
in the front of the store and said to those in the
store "nobody move, this is a holdup." This man
informed customers that came into the store that
it was a holdup and to go to the back of the store.
All present were relieved of the money from their
wallets or purses and approximately $800 or $900
was taken from the cash registers during the epi-
sode. A shot was fired because someone did not
move fast enough to suit the robbers. Witnesses
saw the robbers leave in what looked like a 1963
Buick Electra. About an hour after the robbery,
defendant accompanied by another person was
stopped while the defendant was driving a 1964
Buick Electra owned by his sister and brother-in-
law. After being taken to police headquarters,
they were placed in a lineup, fingerprinted and
photographed. Within a few hours thereafter, de-

fendant was released. He was also stopped several other times while driving the same 1964 Buick Electra, but was not arrested. On May 8, 1964, he was arrested at his sister's home. At that time, without a warrant, the officers searched the defendant and the home.

Defendant on trial testified that he was not at the scene of the holdup but at that time was at his sister's home. His sister testified in support of his claim. There were five eyewitnesses who testified at the trial and identified Camak as the man just inside the front door who took part in the robbery telling those in the store and the new customers that it was a holdup and who ordered them to the back of the store where the other robber was situated.

It is true that the testimony of defendant and his sister is at variance with that of the people's witnesses. It is axiomatic that in the course of a trial conflict of testimony may very well occur. It is for this reason that the credibility of the witnesses and the weight to be given their testimony is for the determination of the trier of the facts. *People* v. *Szymanski* (1948), 321 Mich 248; *People* v. *Clark* (1954), 340 Mich 411.

We conclude that there was sufficient testimony presented by the people if believed by the jury to justify a verdict of guilty beyond a reasonable doubt.

7. *The next question concerns the right of defendant to discharge his court-appointed appellate counsel.*

This question is not properly before the court at this time inasmuch as the issue arose after this appeal was commenced.

8. *The last issue for determination concerns defendant's claim for a new trial because of alleged*

*untruthful answers given by two of the jurors on voir
dire to the question: "Have you been or are you now
connected with any law-enforcement agency?"*

This has come about by the fact that defendant in
one of his letters to his present counsel during the
time this appeal was pending, asserted that his
former counsel had informed him of these facts.

As to this issue, there is no record before us to
review. The matter has not been presented to the
trial court in the form of a motion for new trial.
Therefore, this claimed error is not considered by
us on this appeal.

Affirmed.

LESINSKI, C. J., and J. H. GILLIS, J. concurred.