PEOPLE v. DuPUIE

PEOPLE v. PAYNE

1. WITNESSES—CREDIBILITY—QUESTION OF FACT.
   The credibility of a witness's testimony, as long as it is admissible, even if it is unclear, contradictory, and uncertain, is for the jury to determine.

2. CRIMINAL LAW—IDENTIFICATION TESTIMONY—WEIGHT—MOTION TO STRIKE.
   Failing to strike a witness's identification testimony of the defendant was not error even though the witness testified that she had been shown photographs of the defendant but was unable to identify him, that she had seen the defendant's picture in the newspaper and on television, but still couldn't identify him, that she was unable to identify the defendant at a showup, but that she was later able to identify the defendant at a second showup and where the witness's testimony was unclear and contradictory, because the weight to be given identification testimony is for the trier of fact to decide.

Appeal from Recorder's Court of Detroit, Robert J. Colombo, J. Submitted Division 1 January 7, 1971, at Detroit. (Docket Nos. 9083 and 9220.) Decided February 19, 1971.

William DuPuie and James C. Payne were convicted of first-degree murder. Defendants appeal. Affirmed.

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 58 Am Jur, Witnesses § 862.
[2] 29 Am Jur 2d, Criminal Law §§ 371, 372.
    Admissibility of evidence as to extrajudicial or pretrial identification of accused. 71 ALR2d 449.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Angelo A. Pentolino,* Assistant Prosecuting Attorney, for the people.

*Charles Burke,* for defendant DuPuie.

*Oliver C. Nelson,* for defendant Payne.

Before: R. B. BURNS, P. J., and J. H. GILLIS and DANHOF, JJ.

R. B. BURNS, P. J. Two armed men broke into an apartment occupied by Nathan and Dorothy Lefkowitz. They forced Mr. and Mrs. Lefkowitz into the bedroom where they taped them and compelled them to lie on the floor. The shorter of the intruders was wearing a Halloween-type mask while the other's face was clearly visible. The shorter one rifled through some bureau drawers, took an envelope containing approximately $1,000, and then fled the apartment with the other man.

At the time the two men broke in Mrs. Lefkowitz was talking on the telephone with the apartment manager. When the two broke in she uttered an exclamation and dropped the phone and the apartment manager became suspicious. The manager then called Carl Lindberg, a Michigan State Trooper living in the same apartment complex, and asked him to investigate. Lindberg arrived as the two men were fleeing the apartment and one of them shot and killed him.

Defendants were both charged with and convicted of the crime of first-degree murder.[1]

---

[1] MCLA § 750.316 (Stat Ann 1954 Rev § 28.548).

On the Tuesday following the crime, the police showed photographs to Mr. and Mrs. Lefkowitz for the purpose of identifying the two men. They were unable to identify them from the photographs. Subsequently, on Friday, the Detroit *News* published a copy of one of the pictures shown to them, along with a story stating that a warrant had been issued for defendant DuPuie. That evening a similar story and photograph appeared on television. Mrs. Lefkowitz testified at trial that while the pictures on television and in the newspapers were the same as the ones that were shown to her by the police, she was unable to identify DuPuie in any of them. The next morning the police conducted a showup at the station in the presence of counsel. Mrs. Lefkowitz was unable to identify defendant DuPuie at that time.

A second showup was conducted on October 13, 1970. It was at this showup that Payne was identified by both Mr. and Mrs. Lefkowitz. Counsel was also present at this showup.

At trial Mrs. Lefkowitz testified to all of the above events. Her testimony was unclear, contradictory, and rather uncertain. However, Mr. Lefkowitz had identified DuPuie at the first lineup and later in court. DuPuie's fingerprints were found on an envelope taken from the premises. Because Mrs. Lefkowitz's testimony was so uncertain, counsel moved to strike it from the record and to instruct the jury to disregard it. The motion was denied and counsel assigns this denial as error on appeal.

The jury, as the sole judge of credibility, was properly allowed to weigh Mrs. Lefkowitz's testimony as long as it was admissible. Counsel was present and the lineup was properly conducted.[2]

---

[2] *United States* v. *Wade* (1967), 388 US 218 (87 S Ct 1926, 18 L Ed 2d 1149); *Gilbert* v. *California* (1967), 388 US 263 (87 S Ct

The lineup procedure being unassailable, the next question becomes whether or not the identification at the lineup was based on the prior showing of the photographs and if so whether the prior showing of the photographs was, in the words of *Simmons* v. *United States* (1968), 390 US 377 (88 S Ct 967, 19 L Ed 2d 1247), "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification".

The identification at DuPuie's lineup was *not* based on the prior photographic identification. Even if it had been, there is no showing that the circumstances surrounding the photographic identification procedure was so "impermissibly suggestive" as to warrant its invalidation. In the circumstances of this case the weight to be given identification testimony, as the weight to be given other kinds of testimony, is for the jury. *People* v. *Lloyd* (1967), 5 Mich App 717; *People* v. *Camak* (1967), 5 Mich App 655. The question was properly one for the jury's consideration. Even if they decided not to consider Mrs. Lefkowitz's testimony, there was ample other evidence (especially the fingerprint evidence) to sustain this conviction.

Defendant Payne likewise assigns error in the judge's failure to grant his motion to strike Mrs. Lefkowitz's testimony. He, like DuPuie, was also identified by Mr. Lefkowitz, both at trial and at the lineup. Also, like DuPuie, there was other evidence to link him to the crime. He had borrowed a gun from one Albert Swift. The bullet taken from the deceased's body was, in the opinion of the people's ballistics expert, fired from Swift's gun. *People* v. *Lloyd* and *People* v. *Camak, supra,* state that the weight to be given identification testimony is for

1951, 18 L Ed 2d 1178); *Stovall* v. *Denno* (1967), 388 US 293 (87 S Ct 1967, 18 L Ed 2d 1199).

the jury. What was said in *People* v. *Hammond* (1913), 177 Mich 416, 418 is here applicable.

"We think there was enough to admit this testimony in the instant case, and the jury could give it such weight as they might think it was entitled to."

Sufficient proof is on record to sustain these convictions.

Affirmed.

All concurred.