# STATE OF MICHIGAN

# COURT OF APPEALS

---

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

TONY DEWAYNE WALKER,

       Defendant-Appellant.

UNPUBLISHED
January 9, 2018

No. 335355
Saginaw Circuit Court
LC No. 15-041588-FC

---

Before: O'CONNELL, P.J., and HOEKSTRA and SWARTZLE, JJ.

PER CURIAM.

Defendant, Tony Dewayne Walker, appeals as of right his convictions following a jury trial for armed robbery, MCL 750.529, bank robbery, MCL 750.531, extortion, MCL 750.213, false report of a bomb, MCL 750.411a(3)(a), and unlawful imprisonment, MCL 750.349b. The trial court sentenced Walker as a fourth habitual offender, MCL 769.12, to concurrent prison terms of 180 months to 40 years for armed robbery, 120 months to 25 years for bank robbery, 90 months to 20 years for extortion, 60 months to 10 years for false report of a bomb, and 60 months to 15 years for unlawful imprisonment. We affirm.

## I. FACTS

On July 3, 2015, a man walked into a branch of the FirstMerit Bank in Saginaw, approached a bank teller's window, and handed the teller a note that read, "This is a robbery, give me all hundreds. I have a pipe bomb in my bag. No dye packs or GPS. Don't hit the alarm. Don't draw attention to yourself, or I'll set a bomb off. You have 20 seconds." After the man handed the teller the note, another teller approached her window to buy quarters. Hoping the man would sign his name, the teller also asked him to fill out a withdrawal slip. However, the man seemed "nervous" and left the bank when another customer came inside.

Michigan State Police released images of the suspect from the surveillance video. The images showed the suspect carrying a silver or gray backpack and wearing a San Francisco Giants hat, a black "do-rag," and a North Face Jacket. Crime Stoppers subsequently received an anonymous tip identifying Walker as the suspect because Walker often wore a San Francisco Giants hat and owned a North Face jacket like the one in the surveillance images. Law enforcement followed up on the tip and went to Walker's home. The police officers saw that Walker physically resembled the teller's description and that Walker was wearing a San Francisco Giants hat and a black do-rag. Police arrested Walker on an unrelated warrant.

-1-

Following the arrest, a police officer prepared an affidavit in support of two search warrants. The affidavit included information from the teller's description of the suspect, the bank's surveillance video, and the observations of the police officer who investigated the anonymous tip and arrested Walker. The first search warrant was for Walker's residence where troopers seized a dark gray and silver North Face jacket and a bag similar to the one in the surveillance videos. Inside the bag were more black do-rags. The second search warrant was for a DNA buccal swab from Walker. A forensic scientist who analyzed the bank robbery note testified that the note contained DNA from three different people, the majority of which came from Walker. Additionally, the prosecution presented images taken from patrol camera footage of a traffic stop earlier that year showing Walker wearing a North Face jacket that was darker on top and lighter on the bottom. The jury subsequently found Walker guilty of all counts.

## II. ANALYSIS

### A. UNREASONABLE SEARCH AND SEIZURE

Walker argues that the affidavit used to obtain the search warrant was inadequate because it relied on an anonymous tip related to Walker's baseball cap and do-rag. Walker did not preserve this issue in the trial court, so we review it for plain error. See *People v Carines*, 460 Mich 750, 764; 597 NW2d 130 (1999). To demonstrate plain error, a defendant must show that an error occurred, the error was plain, and the plain error affected substantial rights. *Id.* at 763.

We generally review constitutional issues de novo. *People v Keller*, 479 Mich 467, 473-74; 739 NW2d 505 (2007). However, we give a magistrate's determination of probable cause "great deference . . . ." *Id*. at 474.

A search warrant requires a showing of probable cause. US Const, Am IV; Const 1963, art 1, § 11. Probable cause exists "if there is a substantial basis for inferring a fair probability that evidence of a crime exists in the stated place." *People v Brown*, 297 Mich App 670, 675; 825 NW2d 91 (2012). "Probable cause must be based on facts presented to the issuing magistrate by oath or affirmation." *People v Waclawski*, 286 Mich App 634, 698; 780 NW2d 321 (2009). When the facts are presented in an affidavit, the affiant must not rely on his or her own conclusions or beliefs but must include facts within the affiant's own knowledge. *People v Martin*, 271 Mich App 280, 298; 721 NW2d 815 (2006), aff'd 482 Mich 851 (2008). The affidavit may rely on information obtained from an unnamed informant, but it must include "affirmative allegations from which the judge or district magistrate may conclude that the person spoke with personal knowledge of the information and either that the unnamed person is credible or that the information is reliable." MCL 780.653(b). When police produce evidence substantiating the allegations from an anonymous tipster, continued focus on the tip itself is misplaced. *Keller*, 479 Mich at 477. Although an anonymous tip may prompt an investigation, police observation that confirms the tip is the basis of probable cause, not the anonymous tip itself. *Id*. at 483.

In this case, the police investigated and verified the anonymous tip *before* seeking the search warrant. The affidavit detailed the teller's description of the suspect and explained that the affiant also viewed the surveillance video. It also stated that two troopers visited Walker after receiving the anonymous tip and observed that Walker resembled the suspect and wore

similar clothing. Therefore, although the anonymous tip was the catalyst for the police investigation, the troopers' investigation and observations of Walker were the basis for the affidavit. Accordingly, the search of Walker's residence was based on sufficient probable cause as outlined in the affidavit in support of the search warrant.[1]

## B. INEFFECTIVE ASSISTANCE OF COUNSEL

Walker next asserts that his trial counsel's failure to move to suppress the evidence from the search of his home constituted ineffective assistance of counsel. "Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law." *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004) (quotation marks and citation omitted). We review findings of fact for clear error and determinations of constitutional law de novo. *Matuszak*, 263 Mich App at 48. Walker did not move for a new trial or an evidentiary hearing, so he has not preserved this issue. See *People v Lopez*, 305 Mich App 686, 693; 854 NW2d 205 (2014). Accordingly, we review it for plain error. See *id*.

To establish ineffective assistance of counsel, a defendant must show that "counsel's representation fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *People v Vaughn*, 491 Mich 642, 669; 821 NW2d 288 (2012) (quotation marks and citation omitted). Sound trial strategy does not constitute ineffective assistance of counsel. *People v Unger*, 278 Mich App 210, 242; 749 NW2d 272 (2008). Defense counsel is not required to advocate a meritless position or raise a futile objection. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

Walker argues that he was denied the effective assistance of counsel because counsel did not file a motion to suppress the evidence obtained through a search warrant based on an inadequate affidavit. Because the search warrant was based on probable cause, a motion to suppress the evidence obtained from that search would have been futile. Accordingly, trial counsel was not ineffective for failing to make a futile motion to suppress.

## C. SUFFICIENCY OF THE EVIDENCE

Walker argues that the prosecution presented insufficient evidence to identify him as the suspect who committed the bank robbery and to establish the elements of unlawful imprisonment. We review de novo a challenge to the sufficiency of the evidence. *Ericksen*, 288

---

[1] Walker recognizes the "good faith" exception to the exclusionary rule that prevents suppression of evidence seized pursuant to a warrant lacking probable cause. This exception applies when a police officer acts "within the scope of, and in objective, good-faith reliance, on a search warrant obtained from a judge or magistrate." *People v Goldston*, 470 Mich 523, 530; 682 NW2d 479 (2004). However, Walker submits that this exception is inapplicable because the affidavit submitted to obtain the search warrant of his residence was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." We need not reach this issue because we conclude that the warrant was based on probable cause.

Mich App at 195. Viewing the evidence in a light most favorable to the prosecution, we "determine whether a rational trier of fact could have found that the essential elements of the crime were proved beyond reasonable doubt." *Id*. at 196. A "reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict." *People v Bulls*, 262 Mich App 618, 623-624; 687 NW2d 159 (2004) (quotation marks and citation omitted).

Due process requires that the prosecution introduce sufficient evidence on each element of an offense to justify a verdict of guilt beyond a reasonable doubt. *People v Wolfe*, 440 Mich 508, 513-514; 489 NW2d 748, amended on other grounds, 441 Mich 1201 (1992). Identity is a necessary element of every offense. *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008). The prosecution can offer direct testimony or circumstantial evidence to prove the identity of a defendant. *People v Kern*, 6 Mich App 406, 409-410; 149 NW2d 216 (1967). The jury must determine what weight to give testimony regarding identification. *People v DuPuie*, 31 Mich App 14, 17; 187 NW2d 260 (1971).

Walker challenges the sufficiency of the identity evidence because the bank teller did not identify him at trial, the clothing worn by the suspect was not particularly distinctive, and the police did not compare his handwriting to the handwritten note. Walker also challenges the significance of the DNA found on the note.

The prosecution presented ample evidence for the jury to find Walker guilty of robbery. The jury viewed the video surveillance and still images taken from the surveillance videos of the bank robbery that showed the suspect. State troopers testified that Walker physically resembled the suspect and wore similar clothing. The prosecution introduced multiple items of clothing seized from Walker and his home that were similar to the clothing worn by the suspect, and the jury saw images from an earlier traffic stop in which Walker was wearing the same jacket as the suspect. The jury heard testimony from a forensic expert who said that the likelihood that the DNA on the bank robbery note was from someone other than Walker was 1 in 262.2 trillion. Walker fails to provide an alternate explanation for the presence of his DNA on the note, which gives rise to a reasonable inference that he handled the note. Thus, viewed in the light most favorable to the prosecution, there was sufficient evidence for the jury to find that Walker was the person responsible for the offenses.

Furthermore, the prosecution offered sufficient evidence to sustain Walker's conviction of unlawful imprisonment. The elements of the offense of unlawful imprisonment are the knowing restraint of another person under a number of listed circumstances, including "by means of a weapon or dangerous instrument" or "to facilitate the commission of another felony or to facilitate flight after commission of another felony." MCL 750.349b(1).

> (a) "Restrain" means to forcibly restrict a person's movements or to forcibly confine the person so as to interfere with that person's liberty without that person's consent or without lawful authority. The restraint does not have to exist for any particular length of time and may be related or incidental to the commission of other criminal acts. [MCL 750.349b(3)(a).]

In this case, Walker knowingly restrained the teller by threatening her with a dangerous weapon (a pipe bomb) in furtherance of committing other felonies, including bank robbery and armed robbery. At trial, the teller agreed that she felt "restrained in her movements" and "feared injury" after Walker passed her the note. Therefore, when the evidence is viewed in the light most favorable to the prosecution, there was sufficient evidence for the jury to find Walker guilty of unlawful imprisonment.

## D. DOUBLE JEOPARDY

Finally, Walker argues that the conviction for unlawful imprisonment violates the constitutional prohibition against double jeopardy. However, he neither preserved this issue in the trial court nor properly raised it before this Court by not presenting it in the statement of questions. See MCR 7.212(C)(5); *People v Anderson*, 284 Mich App 11, 16; 772 NW2d 792 (2009). We review unpreserved constitutional issues for plain error affecting a defendant's substantial rights. *People v Wilson*, 242 Mich App 350, 360; 619 NW2d 413 (2000).

A defendant cannot be placed in jeopardy twice for the same offense. US Const, Am V; Const 1963, art 1, § 15. This prohibition protects against successive prosecutions and multiple punishments for the same offense. *People v Smith*, 478 Mich 292, 299; 733 NW2d 351 (2007). Multiple convictions stemming from the same conduct do not constitute multiple punishments if the Legislature "specifically authorizes cumulative punishment under two statutes . . . ." *People v Miller*, 498 Mich 13, 18; 869 NW2d 204 (2015) (quotation marks and citation omitted). If the legislative intent is not clear, courts apply the "abstract legal elements test." *Miller*, 498 Mich at 19 (quotation marks and citation omitted). Under this test, multiple convictions do not violate double jeopardy "if each of the offenses for which defendant was convicted has an element that the other does not . . . ." *Miller*, 498 Mich at 19 (quotation marks and citation omitted).

Walker argues that robbery would always include unlawful imprisonment under the prosecution's charging theory because the victim of a robbery "would not feel free to move." Therefore, he asserts, unlawful imprisonment is a lesser-included offense of robbery, and his unlawful imprisonment conviction impermissibly amounts to double jeopardy.

Walker focuses on the abstract elements test, but no such inquiry is required because the Legislature made its intention clear. The unlawful imprisonment statute provides: "[t]his section does not prohibit the person from being charged with, convicted of, or sentenced for any other violation of law that is committed by the person while violating this section." MCL 750.349b(4). Under the plain language of the statute, the Legislature has authorized multiple punishments, and Walker's unlawful imprisonment conviction did not violate double jeopardy.

Furthermore, the offenses pass the "abstract elements test" because each offense has an element that the other does not. The offense of unlawful imprisonment contains the unique element of "knowingly restrain[ing]" a person. MCL 750.349b(1). Neither armed robbery nor bank robbery include this element. Furthermore, both armed robbery and bank robbery contain unique elements that unlawful imprisonment does not. An element of armed robbery is the "felonious taking of property . . . ." *Smith*, 478 Mich at 319. Similarly, bank robbery includes the element of "larcenous or felonious intent to access a bank[.]" *People v Ford*, 262 Mich App

443, 455; 687 NW2d 119 (2004). Therefore, Walker's convictions do not violate the double jeopardy clause under the "abstract legal elements" test.

We affirm.

/s/ Peter D. O'Connell
/s/ Joel P. Hoekstra
/s/ Brock A. Swartzle