PEOPLE v. PEARCE.

1. HOMICIDE—COMMON FELONIOUS PLAN—SELF-DEFENSE—REQUEST
   TO CHARGE.
   The conflicting theories, of prosecution of 2 defendants on
   charge of murder that they had returned, armed, to renew an
   earlier affray and that the homicide was committed as part of
   a common felonious plan between them thus making both
   equally guilty of the killing, and of appellant that there was
   no such common felonious plan between defendants, that de-
   fendants were retreating when the victim advanced upon ap-
   pellant's codefendant with a club and forced the codefendant
   to stab in self-defense, each having been supported by proof,
   entitled appellant to requested instruction that if jury found
   the codefendant acted in self-defense, it would have to find
   appellant not guilty (CL 1948, § 767.39).

2. SAME — COMMON FELONIOUS PLAN — SELF-DEFENSE — INSTRUC-
   TIONS.
   Appellant was entitled to an instruction that he should be
   acquitted, where there was testimony to support his theory of
   defense to charge of murder that if jury found he was not
   engaged in a common felonious plan with the codefendant or
   if it found that the codefendant struck the fatal blow in self-
   defense (CL 1948, § 767.39).

   CARR, C. J., dissenting.

Appeal from Ingham; Coash (Louis E.), J.  Sub-
mitted December 5, 1962.  (Calendar No. 100, Docket
No. 49,394.)  Decided April 5, 1963.

Bruce Pearce was convicted of murder in the sec-
ond degree.  Reversed and remanded for new trial.

REFERENCES FOR POINTS IN HEADNOTES
[1, 2]  26 Am Jur, Homicide §§ 515–564.

*Frank J. Kelley,* Attorney General, *Eugene Kra-sicky,* Solicitor General, *Leo A. Farhat,* Prosecuting Attorney, and *John Robert Dethmers,* Assistant Prosecuting Attorney, for the people.

*Stuart J. Dunnings, Jr.,* for defendant.

SOURIS, J. Appellant Pearce and a man named Gross were charged with murder. They were tried together and convicted by a jury of murder in the second degree. The proofs conclusively established that Gross wielded the death knife. On appeal, leave having been granted, Pearce claims that the trial judge's jury charge erroneously imputed to him the defense of self-defense claimed only by his codefendant and that the trial judge refused his trial counsel's request that the judge instruct the jury that if it found that defendant Gross acted in self-defense, it would have to find defendant Pearce not guilty.

The defendants became involved in an altercation with a group of men, patrons of a tavern. The proofs portray the altercation as one of words and menacing gestures abruptly climaxed when Gross plunged a knife into the neck of the deceased. The people's theory, supported by their proofs, was that the 2 defendants had returned, armed, to renew an earlier affray and that the homicide was committed as part of a common felonious plan between them, thus making Pearce and Gross equally guilty of the killing. CL 1948, § 767.39 (Stat Ann 1954 Rev § 28.979). Appellant's theory, supported by defendants' proofs, was that there was no such common felonious plan between defendants and that, in any event, defendants were retreating when the victim advanced upon Gross with a club and forced Gross to stab him in self-defense. The conflicting theories, each supported by proof, entitled Pearce to the requested instruction. Instead, the jury was instructed on the

self-defense issue in a manner which seems to have required conviction of Pearce if the jury found that *he* (as well as Gross) did not act in self-defense. The court's charge to the jury included the following:

"Now, as you know, ladies and gentlemen of the jury, it is the claim of the defendants in this case that they acted in self-defense when Jerry Spagnuolo met them there in the alley on the date in question.

"In justification of the offense here charged against them, the defendants have interposed a plea of self-defense, and under certain circumstances this is a good defense. To make the plea available it must appear that the defendants were without fault upon their part. If he—or they—when I say 'he' I mean 'they'—if they themselves were the aggressor in the conflict, they cannot invoke the doctrine of self-defense as an excuse for the killing, unless he was at that time in immediate danger of losing his own life or suffering some grievous bodily injury, and there was no retreat open for him and his only safety lay in striking the blow which caused the death of Jerry Spagnuolo. * * *

"The burden of proof of all such matters is upon the people to show that the defendant is guilty of the offense charged, and the people's testimony must be such as to satisfy the jurors that the killing was not done in self-defense. The burden is not on the defendant who makes the claim of self-defense to satisfy the jury of the truth of his own claim. * * *

"You are further instructed that a killing is not justifiable on the ground of self-defense if the defendant, after a difficulty between the deceased and himself had terminated, or after he had an opportunity to decline combat, continued the struggle or renewed the affray, the result of which was the homicide; and that is the reason irrespective of who was at fault in the original encounter. The defendant fails to make out a case of self-defense where the evidence shows he renewed a difficulty after the deceased abandoned it."

Nowhere in the charge was the jury instructed that only Gross was claiming self-defense but that, if established as to Gross, it would require Pearce's acquittal. As given, the charge imputed to Pearce a defense he did not claim,—a defense unsupported by any proof. Attributing to Pearce an unclaimed defense which there was no possibility the jury could find in his favor, patently misstated his theory of the case. As to Pearce, the jury should have been instructed to acquit him if it found he was not engaged in a common felonious plan with Gross or if it found that Gross struck the fatal blow in his own self-defense. *Cf. People* v. *Onesto,* 203 Mich 490, 496.

Reversed and remanded for new trial.

Kelly, Black, Kavanagh, and Otis M. Smith, JJ., concurred with Souris, J.

Carr, C. J. (*dissenting*). Appellant herein and one Felton Gross were prosecuted in the circuit court of Ingham county under an information charging that on the 9th day of July, 1958, they did kill and murder one Jerry Spagnuolo. Following a jury trial both defendants were convicted of second-degree murder and sentence was imposed. Gross made application to this Court for leave to appeal, which was denied. The application of appellant was granted and his case is now before us, it being claimed in his behalf that reversible error occurred during the course of his trial before the jury.

It appears from the record in the case that on the date charged in the information Gross and Pearce, with others, were in an automobile in proximity to a certain bar in the city of Lansing. While there they engaged in an altercation with others, including apparently the owner or operator of the bar and Spagnuolo. In the course of such altercation Pearce

got out of his automobile, opened the trunk thereof and took out a knife and a wrench, referred to in the testimony as a pair of clamp pliers. In a statement subsequently given by Pearce to a member of the police department of the city of Lansing the knife was described as a hunting knife, approximately 10" in length. According to this statement, which was introduced in evidence on the trial, Pearce communicated to Gross his intention of obtaining the weapons in question, which he placed on the seat of the automobile on his return thereto. Thereafter the parties left the vicinity for a few minutes, apparently driving to the residence of a relative of Mrs. Pearce.

Testimony was introduced tending to show that some discussion took place, including remarks by Pearce that he was going back to the tavern "to fight." That he and Gross did return to the scene of the prior altercation was not in dispute. The proofs indicated that they went down an alley to the rear of the tavern, Gross then having in his possession the hunting knife that Pearce had taken from the trunk of his car, while the latter carried in his pocket the wrench or pliers. Testimony was offered indicating that Pearce inquired if a certain person was at the tavern and received a negative answer. On the trial of the case it was his claim that the purpose in going to the tavern was to find the individual sought. However, on being told that the party to whom the inquiry related was not present, Gross and Pearce did not leave the premises but continued the altercation which terminated in Gross inflicting a fatal wound on Spagnuolo with the knife which belonged to Pearce.

On the trial of the case it was the claim of both defendants that Gross stabbed Spagnuolo in self-defense. Counsel representing each defendant examined witnesses at some length with reference to

the occurrence, the record suggesting that each was proceeding on the theory that the homicide was committed by Gross in defense of his own person. The case was tried on behalf of the people on the theory that the 2 defendants were acting in concert pursuant to a plan that they had formed, and that they had armed themselves with the weapons above mentioned with the purpose and intent in mind of pursuing and carrying out such plan.

The theory of the defense of appellant was set forth in the following excerpt from the charge of the trial court:

"Now, in this case, ladies and gentlemen, as to Bruce Pearce, it is charged that he is what is known as an accessory, and I charge you that the law of the State of Michigan recognizes no distinction between one who directly commits the act constituting a criminal offense and the one who procures, counsels, aids, or abets in its commission. Therefore, every person concerned in the commission of a criminal offense, whether he directly commits the act constituting the offense or procures, counsels, aids, or abets in its commission, is equally guilty of such offense.

"Therefore, if you find from the evidence and beyond a reasonable doubt that the defendant Bruce Pearce procured, counseled, aided or abetted in the commission of said offense, then and in that event the defendant Bruce Pearce would be guilty of the offense here charged against him and it would be your duty to convict him.

"I further charge you in that connection, ladies and gentlemen, there can be no responsibility against one who is not himself engaged in the acts of his associate unless it is within the scope of the combination to which he is a party, and this you will determine from all the evidence in this case. Merely being present when an offense is committed or having knowledge that an offense was to be committed

or will be committed is not sufficient to render the defendant guilty as an accomplice."

An examination of the entire charge to the jury indicates that the presiding judge discussed fully the various elements of the case. The proofs were extensive, the trial beginning on December 8, 1958, and continuing until the 29th of the same month. Counsel for appellant presented 24 specific requests to charge, most of which were either given in the language of counsel or substantially covered. The principles governing the right of self-defense were discussed at length. Attention was directed to the fact that appellant did not engage in any fight or remove the pliers from his pocket. The jury could scarcely have failed to understand that the prosecution's claim as to the guilt of appellant rested on the theory that he was an accessory or an accomplice who had "procured, counseled, aided or abetted" a felonious homicide.

In the course of the charge the trial judge stated to the jury:

"Now, as you know, ladies and gentlemen of the jury, it is the claim of the defendants in this case that they acted in self-defense when Jerry Spagnuolo met them there in the alley on the date in question.

"In justification of the offense here charged against them, the defendants have interposed a plea of self-defense, and under certain circumstances this is a good defense. To make the plea available it must appear that the defendants were without fault upon their part. If he—or they—when I say 'he' I mean 'they'—if they themselves were the aggressor in the conflict, they cannot invoke the doctrine of self-defense as an excuse for the killing, unless he was at that time in immediate danger of losing his own life or suffering some grievous bodily injury, and there was no retreat open for him and his only

safety lay in striking the blow which caused the death of Jerry Spagnuolo."

Appellant now claims that he did not in fact rely on the theory of self-defense, and that the charge was erroneous to such an extent as to constitute reversible error. It may well be questioned if the statement of the trial judge could, by any possibility, have been interpreted by the jury in a manner prejudicial to appellant. As before suggested, however, the record discloses that the case was tried on behalf of defendants in such manner as to suggest that each was relying on the theory that Gross took the life of Jerry Spagnuolo in self-defense, and, hence, that no felonious homicide was committed. Obviously the trial judge so interpreted the defense interposed by each defendant, and the record fully justified him in so concluding. Among the requests to charge submitted on behalf of appellant was:

"If you find that defendant, Felton Gross, acted in self defense, you must find defendant, Bruce Pearce, NOT GUILTY."

The balance of the request in which the language quoted was contained was open to objection, and presumably for that reason none of said request was given. However, the statement clearly suggests the theory of counsel for appellant on the trial, and it further appears that the failure to include in the charge the statement quoted is here assigned as error. An instruction to the effect that the acquittal of Gross would necessitate the return of a verdict of not guilty as to Pearce might well have been given. However, the verdict of the jury determining that Gross did not act in self-defense renders the omission harmless error at most. *People* v. *Collins,* 166 Mich 4, 8.

The charge of the trial court as given is in accord with prior decisions of this Court, among which may

be cited: *People* v. *Collins,* 216 Mich 541, 547; *People* v. *Walters,* 223 Mich 676, 682. The rule is also firmly established by prior decisions that in considering alleged errors in a charge to a jury in a criminal case the correctness of such a charge cannot be properly tested by taking particular parts thereof. *People* v. *Brown,* 53 Mich 531, 536; *People* v. *Williams,* 208 Mich 586, 591; *People* v. *Serra,* 301 Mich 124, 132, 133.

We find no reversible error in the record in this case and the judgment should be affirmed.

DETHMERS, J., did not sit.

O'HARA, J., took no part in the decision of this case.