## PEOPLE v GAYTON

1. Criminal Law—Trial Court—Duty of Trial Judge—Defendant's Theory of Case—Failure to Object—Appeal and Error—Court Rules.

   It is the duty of the trial court in a criminal case to present adequately the defendant's theory of the case to the jury; failure to do so is reversible error despite the fact that no request or objection is made (GCR 1963, 516).

2. Criminal Law—Mistrial—Instructions to Jury—Defendant's Theory of Case—Entirety of Instructions.

   A defendant was not entitled to a mistrial on the basis of the instructions given by the judge to the jury relating to the defendant's theory of the case where the instructions, when considered in their entirety, fairly presented the defendant's theory of the case to the jury.

3. Criminal Law—Motions—Directed Verdict—Acquittal—Evidence—Elements of Crime Charged—Murder—Inferences.

   The question presented in a criminal trial by a motion for a directed verdict of not guilty is whether there is sufficient evidence from which a jury can reasonably infer all of the elements of the crime charged; when determining whether there was sufficient evidence on each essential element of a charge of murder in the first degree so as to permit submission of that charge to the jury, the prosecutor's evidence must be taken as true, and it must be viewed in a light most favorable to the prosecution so that the prosecution may benefit from every reasonable inference to be drawn therefrom.

---

References for Points in Headnotes

[1, 2] 75 Am Jur 2d, Trial § 699.

[3, 4] 75 Am Jur 2d, Trial §§ 548–558.

[5] 40 Am Jur 2d, Homicide §§ 263–266.

   Homicide: presumption of deliberation or premeditation from circumstances attending the killing. 96 ALR2d 1435.

[6] 75 Am Jur 2d, Trial § 993.

   Prejudicial effect of jury's procurement or use of book other than lawbook during deliberations. 54 ALR2d 738.

4. HOMICIDE—MOTIONS—DIRECTED VERDICT—ACQUITTAL—FIRST-DE-
    GREE MURDER—EVIDENCE—ELEMENTS OF CRIME CHARGED.

   A motion for a directed verdict of acquittal should be denied in a
   defendant's trial for first-degree murder if there is any evidence
   at all on each of the elements of murder in the first degree.

5. HOMICIDE—EVIDENCE—PREMEDITATION—DELIBERATION—FIRST-DE-
    GREE MURDER—INFERENCES—CIRCUMSTANCES OF KILLING.

   Evidence of premeditation and deliberation sufficient to sustain a
   conviction of first-degree murder may be inferred from the
   character of the weapon used, the wound inflicted and the
   circumstances surrounding the killing.

6. CRIMINAL LAW—MOTIONS—SETTING ASIDE VERDICT—JURY DELIBER-
    ATIONS—IMPROPER ITEMS IN JURY ROOM—DISCRETION.

   The denial of a criminal defendant's motion to set aside a guilty
   verdict returned by a jury because one juror took two volumes
   of Collier's Encyclopedia into jury deliberations and another
   juror took in a slip of paper with the definitions of two words
   written on it was not an abuse of the trial court's discretion
   where the trial court held hearings on the issue at which the
   jurors testified and it was determined that the items did not
   enter into and were not considered in the jury verdict and
   where the defendant has not shown any prejudice sufficient to
   set aside the verdict; a showing of mere potential for prejudice
   from some article improperly in the jury room is insufficient to
   warrant granting a mistrial.

Appeal from Oakland, Robert B. Webster, J.
Submitted January 9, 1978, at Lansing. (Docket
No. 29330.) Decided February 22, 1978.

Clarence B. Gayton was convicted of second-de-
gree murder. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *L. Brooks Patterson,*
Prosecuting Attorney, *Robert C. Williams,* Chief
Appellate Counsel, and *Michael J. Modelski,* As-
sistant Appellate Counsel, for the people.

*Lynn V. Hooe, Jr.,* for defendant on appeal.

Before: Bronson, P. J., and R. B. Burns and R. E. A. Boyle,* JJ.

R. E. A. Boyle, J. Defendant was convicted by a jury of murder in the second degree and was sentenced to 20 to 40 years in prison. He appeals as of right.

There is no marked dispute about the facts of this case. On the afternoon of November 15, 1975, several people had gathered together to socialize at 410 Central Street in Pontiac, Michigan. Among them were the defendant and the decedent, Mr. Willard Washington. At some point in time the defendant and the decedent began discussing an incident that had occurred the previous night and which had involved the defendant and the decedent's son, Jimmy Leroy Washington.

The defendant, when questioned by the decedent as to what had happened the previous night, stated, "You better check him [decedent's son], if that damn gun had gone off last night he would have been a dead son-of-a-bitch." As testified to by a witness to this discussion, the defendant further stated that, although the gun did not go off last night, it would go off today.

Later that afternoon, subsequent to this discussion, the defendant left the house and went to a grocery store and returned to the house approximately 15 minutes later to retrieve his coat. He remained in the house only a few minutes before again leaving.

The decedent followed him to the front door soon afterwards, opened it, and addressed the defendant. Although there is no agreement as to the exact words used by the decedent, the gist of decedent's statement to defendant is agreed upon.

* Circuit judge, sitting on the Court of Appeals by assignment.

A witness testified that the decedent opened the front door and said to the defendant, " '[Y]ou don't have to leave because nobody is mad at you, come on back.' " She further testified that the decedent had done nothing other than address the defendant.

Another witness testified that decedent said, " 'We know you got your gun; you don't have to run, you don't have to hide.' " A third witness testified that the decedent stated to the defendant, " 'You don't have to leave. No one is mad at you. We know you got your little ole gun.' "

A 12-year old witness testified he witnessed this scene from about five feet away from the defendant. He testified that he saw the defendant standing on the sidewalk and the decedent standing in the doorway. He heard the defendant say to the decedent, "If you say another word, I'll shoot you." To this, the decedent responded, "Nobody's going to hurt you. Come on back."

It is uncontroverted that the decedent had nothing in his hands at the time that he addressed the defendant. Immediately after the decedent made this statement, the defendant turned towards him and shot two times at him with a handgun.

At this, the decedent stepped back into the house, having been shot in his left hip. The defendant, with gun in hand, ran back up the steps to the porch and opened the front door. The decedent then grabbed the defendant's arm and they began to grapple for the gun. In the process of doing so, they fell off the front porch. The defendant fell to the ground and the decedent fell on top of him. When they got to their knees, face to face, the defendant's gun discharged three times.

Defendant raises three issues, each of which we will discuss. He initially contends that he had

argued the absence of premeditation and deliberation but that the trial court erroneously instructed the jury that one part of defendant's theory of the case was that there was an absence of premeditation and deliberation and that, therefore, the jury should consider only murder in the second degree and manslaughter.

It was the duty of the trial court to present adequately the defendant's theory of the case to the jury. GCR 1963, 516; *People v Savoie,* 75 Mich App 248; 255 NW2d 11 (1977), and a failure to do so is reversible error despite the fact no request or objection is made. *People v Stanley Jones,* 69 Mich App 459, 462; 245 NW2d 91 (1976). Here, the trial court did direct the attention of the jury to defendant's theory of self-defense. Defendant did not object to the substance of this charge by the trial court. It was the duty of defense counsel to submit to the trial court at the close of the evidence a statement of the issues and his theory of the case as to each issue. GCR 1963, 516.7. He failed to do so. The trial court on his own motion instructed the jury as follows:

"THE COURT: * * * Now, the Defendant in this case stated as I understand the situation two things:

"One that the act of the Defendant was without premeditation and deliberation and accordingly first degree murder should not be considered by you and that you should consider only second degree murder and manslaughter.

"Of course the Defendant strongly contends for a verdict of not guilty.

"One of those theories that the Defendant contends is that the actions of the Defendant were justifiable and excuseable *[sic]* by reason of the defense of self-defense."

Defendant contends that this instruction, in effect, told the jury that one of defendant's theories

in the case was that he was guilty of second-degree murder only. When this was brought to the attention of the trial court by defense counsel, the court denied such was the effect or intent of the instruction. The trial court offered to reinstruct the jury before they began deliberations to cure any possible misstatement of defendant's theory of the case. Defense counsel refused the judge's offer to reinstruct the jury—even though this action was one which defense counsel had requested.

At one point during their deliberations, the jury requested reinstruction on murder in the second degree and manslaughter. The trial court took this opportunity to reinstruct the jury on all charges against defendant, as well as on defendant's theory of the case. Defense counsel did not object to this instruction on defendant's theory of the case.

We find that, considering the instructions in their entirety, the trial court fairly presented defendant's theory of the case to the jury. Defendant was not entitled to a mistrial on the basis of such instructions.

Defendant next contends that the people did not present sufficient evidence of premeditation and deliberation to take the question of murder in the first degree to the jury, and that he was entitled to a directed verdict as to that charge.

The issue presented by a motion for a directed verdict of not guilty is whether there is sufficient evidence from which a jury can reasonably infer all of the elements of the crime charged. *People v Moore,* 51 Mich App 48; 214 NW2d 548 (1974). When determining whether there was sufficient evidence on each essential element of a charge of murder in the first degree so as to permit submission of that charge to the jury, the people's evidence must be taken as true, and it must be

viewed in a light most favorable to them so that they may benefit from every reasonable inference to be drawn therefrom. *People v Garcia,* 398 Mich 250, 256; 247 NW2d 547 (1976).

A motion for directed verdict must be denied if there is any evidence at all on each of the elements of murder in the first degree. *People v Wesley Brown,* 35 Mich App 153; 192 NW2d 281, *lv den,* 386 Mich 768 (1971). Evidence of premeditation and deliberation sufficient to sustain a conviction of first-degree murder may be inferred from the character of the weapon used, the wound inflicted, and the circumstances surrounding the killing. *People v Macklin,* 46 Mich App 297; 208 NW2d 62 (1973).

An examination of the record discloses sufficient evidence upon which a jury could find premeditation and deliberation.

Finally, defendant contends the trial court erred in denying defendant's motion to set aside the verdict, claiming one member of the jury took two volumes of Collier's Encyclopedia and another juror took the definition of two words written down on a piece of paper into the jury deliberations. He argues that the mere presence of such articles constituted prejudicial error and also contends the articles were in fact considered by the jury in arriving at their verdict as he believes the record indicates.

The trial court held hearings at which jurors testified as to the encyclopedia and the notes. The juror who took the encyclopedia into the jury room testified that she did not read the definitions of two words that she had looked up and marked with pieces of paper until after the jury verdict had been reached. Further, she stated that no other juror looked up the definitions of those two

words in the encyclopedia prior to the time that they had agreed upon a verdict. The trial court having found this to be true, defendant has suffered no prejudice by the presence of these two volumes of Collier's Encyclopedia in the jury room.

After testimony by jurors at a hearing before the trial court concerning one of the jurors having looked up the definitions of two words, written them down on a piece of paper, and taken the paper into the jury room, the judge apparently found the articles did not enter into and were not considered in the jury verdict, and that defendant suffered no prejudice.

In *People v McCrea,* 303 Mich 213, 266; 6 NW2d 489 (1942), the Supreme Court stated:

" 'When by mistake or inadvertence on the part of a juryman or the court, or even through error of judgment on the part of the court, an article has been taken to their room by the jury which ought not to have been, then before a verdict will be set aside for that cause, it must appear, either from an examination of the objectionable article itself, or from facts properly presented by the bill of exceptions, that such article must have been, in the nature of the case, or in point of fact was, considered by the jury in arriving at the conclusion reached by their verdict.' " (Citations omitted.)

In *People v Parker,* 76 Mich App 432; 257 NW2d 109 (1977), a jury had been exposed to a newspaper article containing an account of the trial in which they were sitting. Only two jurors recalled having seen that article. The court in *Parker* questioned both of these jurors and determined that neither was prejudiced by the article. This Court stated in *Parker,* at 448, that a showing of mere potential for prejudice from some object improperly in the jury room is insufficient to warrant granting a

mistrial. This Court went on to state, at 449 of 76 Mich App:

"The mere probability or supposition that jurors may have read prejudicial accounts of the case on which they are serving is not sufficient to support a finding that the trial court abused its discretion in refusing to grant a mistrial. * * * Under the circumstances of this case, in which all jurors who were aware of the article's publication disclaimed any knowledge or recollection of its contents, we hold that the trial judge did not abuse his discretion in refusing to declare a mistrial." (Citations omitted.)

The defendant has not shown any prejudice sufficient to warrant granting a mistrial or to set aside the verdict. The trial court did not abuse its discretion in denying the motions. *People v Parker, supra, People v Iaconis,* 29 Mich App 443; 185 NW2d 609 (1971), *aff'd in People v Bercheny,* 387 Mich 431; 196 NW2d 767 (1972).

The conviction of defendant is affirmed.